# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>CEDAR ELECTRONICS HOLDINGS CORPORATION d/b/a CEDAR ELECTRONICS, INC., d/b/a CEDAR ELECTRONICS CORPORATION,<br><br>Defendant. | Civil Action No. 1:25-cv-004<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against Cedar Electronics Holdings Corporation d/b/a Cedar Electronics, Inc., d/b/a Cedar Electronics Corporation ("Cedar Electronics" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 6,549,583 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| 2. | 6,633,616 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 3. | 7,058,040 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 4. | 7,260,153 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |

| | Patent No. | Reference |
|---|---|---|
| 5. | 7,656,845 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 6. | 7,742,388 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 7. | 8,005,053 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |

2. Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Upon information and belief, Defendant is a corporation duly organized under the laws the State of Delaware with its principal place of business located at 1701 Golf Road, Tower 3, Suite 900, Rolling Meadows, IL 60008.

5. Upon information and belief, Defendant has maintained an established and regular place of business in this District, including facilities located at 4400 Amnicola Hwy Chattanooga, TN 37406. *See* About, CEDARELECTRONICS, https://cedarelectronics.com/about/#.

6. Upon information and belief, Defendant owns and trades under the brand names "Cedar," "Cedar Electronics," "Cobra Electronics," "Cobra," and "Escort."

7. Upon information and belief, Defendant can be served through its registered agent, C T Corporation System, located at 300 Montvue Rd, Knoxville, TN 37919; or through its registered agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange St, Wilmington DE 19801; or at its principal place of business located at 1701 Golf Road, Tower 3, Suite 900, Rolling Meadows, IL 60008; or at any other location where it may be properly served.

COMPLAINT FOR PATENT INFRINGEMENT

E.D. Tenn. No. 1:25-cv-004                                                                 Page | 2

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 2 of 30     PageID #: 2

## JURISDICTION AND VENUE

8.     Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

9.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.     Venue is proper as to Defendant in this District under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District, derives substantial revenue from goods and services provided to customers in this District, and has a regular and established place of business in this District in at least the following locations:  4400 Amnicola Hwy Chattanooga, TN 37406.

11.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Tennessee and in this District; and (iii) having an interest in, using or possessing real property in Tennessee.

12.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

13.     Defendant markets, sells, and delivers accused products in this district, and has committed acts of infringement in this District.

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                                              Page | 3

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 3 of 30     PageID #: 3

14.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

15.     Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

16.     Defendant uses, causes to be used, provides, supplies, or distributes one or more computing devices, including, but not limited to, devices sold under the "Escort" "Cobra" and "Drive Smarter" brand names, including but not limited to:

- **Radar Detectors**, including, but not limited to, ESCORT Redline 360c, MAXcam 360c, MAX 4, Redline 360c and M2 Bundle;

- **Dash Cams**, including, but not limited to, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, Cobra SC 400/D, Cobra CDR 900;

- **Bundles**, including, but not limited to, SC 400 Full Coverage Rear View Bundle and SC 400 Full Coverage External View Bundle,  and

Any other devices and hardware, software, and functionality that comprise substantially similar functionality (collectively, the "Accused Products").

17.     On information and belief, the Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and various subsections thereof, including, but not limited to, 802.11ac and 802.11n.

18.     Defendant was notified that the Accused Products infringe the Asserted Patents by a

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                                    Page | 4

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 4 of 30     PageID
#: 4

letter in December of 2020.

19.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,549,583

20.    Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety. For purposes of this Count I, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **MAXcam 360c, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, and Cobra CDR 900**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

21.    The USPTO duly issued U.S. Patent No. 6,549,583 (the "'583 patent") on April 15, 2003, after full and fair examination of Application No. 09/790,429 which was filed February 21, 2001.  The '583 patent is entitled "Optimum Phase Error Metric for OFDM Pilot Tone Tracking in Wireless LAN."

22.    Fleet Connect owns all substantial rights, interest, and title in and to the '583 patent, including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

23.    The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

24.    The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                 Page | 5

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 5 of 30     PageID #: 5

improved upon what may have been considered conventional or generic in the art at the time of the invention.

25.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

26.    Defendant has directly infringed the claims of the '583 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent.   As just one example of infringement, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; and estimating an aggregate phase error of a subsequent OFDM data symbol relative to the pilot reference points using complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points; wherein the estimating step comprises performing a maximum likelihood-based estimation using the complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points. *See* '583 Evidence of Use Chart, attached hereto as **Exhibit A**.

27.    Defendant has indirectly infringed and continued to indirectly infringe the '583 patent by inducing others to directly infringe the '583 patent. Defendant has induced and continued to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents,

COMPLAINT FOR PATENT INFRINGEMENT

E.D. Tenn. No. 1:25-cv-004                                                                                  Page | 6
Case 1:25-cv-00004-CEA-CHS      Document 1      Filed 01/03/25      Page 6 of 30      PageID
                                          #: 6

the '583 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '583 patent, including, for example, claim 1. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '583 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '583 patent. Defendant's inducement is ongoing.

28.     Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '583 patent. Defendant has contributed and continued to contribute to the direct infringement of the '583 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '583 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '583 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

29.     Defendant had knowledge of its infringement of the '583 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

30.     Furthermore, on information and belief, Defendant has a policy or practice of not

COMPLAINT FOR PATENT INFRINGEMENT

E.D. Tenn. No. 1:25-cv-004                                                      Page | 7
Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 7 of 30     PageID #: 7

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

31.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

32.     Defendant's infringement of the '583 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

33.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,633,616

34.     Fleet Connect repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.  For purposes of this Count II, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **MAXcam 360c, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, and Cobra CDR 900**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

35.     The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081 which was filed August 21, 2001.  The '616 patent is entitled "OFDM Pilot Tone Tracking for Wireless LAN."

36.     Fleet Connect owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

37.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                        Page | 8
Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 8 of 30     PageID
#: 8

inventive components that improve upon the function and operation of preexisting error estimation methods.

38.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

40.     Defendant has directly infringed the claims of the '616 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent.  As just one example of infringement, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform; wherein the determining the phase error estimate step is completed prior to the completion of the processing of the subsequent OFDM symbol with the fast Fourier transform in the parallel path. *See* '616 Evidence of Use Charts attached hereto as **Exhibit B**.

41.     Defendant has indirectly infringed and continued to indirectly infringe the '616 patent by inducing others to directly infringe the '616 patent. Defendant has induced and continued to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '616 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '616 patent, including, for example, claim 12. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '616 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '616 patent. Defendant's inducement is ongoing.

42.     Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '616 patent. Defendant has contributed and continued to contribute to the direct infringement of the '616 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '616 patent, including, for example, claim 12. The special features constitute a material part of the invention of one or more of the claims of the '616 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

43. Defendant had knowledge of its infringement of the '616 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

44. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

45. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

46. Defendant's infringement of the '616 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

47. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,058,040

48. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count III, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **Radar Detectors including, but not limited to, ESCORT Redline 360c, MAXcam 360c, MAX 4, Redline 360c and M2 Bundle), Dash Cams including, but not limited to. Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, Cobra SC 400/D), Bundles, including, but not limited to, SC 400 Full Coverage Rear View Bundle and SC 400 Full Coverage External View Bundle)**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

49.     The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718 which was filed September 21, 2001. The '040 patent is entitled "Channel Interference Reduction."

50.     Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

51.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '040 patent.

52.     The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting data transmission methods.

53.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

54.     Defendant has directly infringed the claims of the '040 patent through the end of its term by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent through the end of its term. As just one example of infringement, Defendant, using the Accused Products, performed a method for data

transmission over first and second media that overlap in frequency. The method included computing one or more time division multiple access (TDMA) time-slot channels to be shared between the first and second media for data transmission; allocating one or more time-slot channels to the first medium for data transmission; allocating one or more of the remaining time-slot channels to the second medium for data transmission; and dynamically adjusting a number of timeslot channels assigned to one of the first and second media during the data transmission to remain within limits of a desired level of service. *See* '040 Evidence of Use Chart attached hereto as **Exhibit C**.

55. Defendant has indirectly infringed and continued to indirectly infringe the '040 patent by inducing others to directly infringe the '040 patent. Defendant has induced and continued to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '040 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '040 patent, including, for example, claim 1. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '040 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '040 patent. Defendant's inducement is ongoing.

56.     Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '040 patent. Defendant has contributed and continued to contribute to the direct infringement of the '040 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '040 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '040 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

57.     Defendant had knowledge of its infringement of the '040 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

58.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

59.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

60.     Defendant's infringement of the '040 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

61.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

COMPLAINT FOR PATENT INFRINGEMENT

E.D. Tenn. No. 1:25-cv-004                                                Page | 14

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 14 of 30     PageID #: 14

**COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. 7,260,153</u>**

62.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count IV, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **MAXcam 360c, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200,** and **Cobra CDR 900**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

63.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.  The '153 patent is entitled "Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels."

64.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

65.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '153 patent.

66.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

67.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                 Page | 15

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 15 of 30     PageID #: 15

improved upon what may have been considered conventional or generic in the art at the time of the invention.

68.     Defendant has directly infringed the claims of the '153 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent.  As just one example of infringement, Defendant, using the Accused Products, performed a method for evaluating a channel of a multiple-input multiple-output ("MIMO") wireless communication system allowing two or more communication devices with multiple radiating elements to transmit parallel data sub-streams which defines a channel matrix metric of cross-talk signal-to-noise ("SNR") for the subs-streams, estimates the channel matrix metric, performs a singular value decomposition ("SVD") of the channel matrix metric estimate to calculate estimated channel singular values, and using the channel matrix metric and estimated channel singular values to calculate a crosstalk measure for the sub-streams. *See* '153 Evidence of Use Charts attached hereto as **Exhibit D**.

69.     Defendant has indirectly infringed and continued to indirectly infringe the '153 patent by inducing others to directly infringe the '153 patent. Defendant has induced and continued to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '153 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '153 patent, including, for example, claim 1. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products

COMPLAINT FOR PATENT INFRINGEMENT

E.D. Tenn. No. 1:25-cv-004                                                                    Page | 16

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 16 of 30     PageID #: 16

in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '153 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '153 patent. Defendant's inducement is ongoing.

70.     Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '153 patent. Defendant has contributed and continued to contribute to the direct infringement of the '153 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '153 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '153 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

71.     Defendant had knowledge of its infringement of the '153 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

72.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

73.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

74.     Defendant's infringement of the '153 patent is, has been, and continues to be willful,

intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

75.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,656,845

76.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count V, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **Radar Detectors including, but not limited to, ESCORT Redline 360c, MAXcam 360c, MAX 4, Redline 360c and M2 Bundle, Dash Cams including, but not limited to, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, Cobra SC 400/D, Bundles including, but not limited to, SC 400 Full Coverage Rear View Bundle and SC 400 Full Coverage External View Bundle**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

77.     The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010 after full and fair examination of Application No. 11/402,172 which was filed on April 11, 2006.  The '845 patent is entitled "Channel Interference Reduction."  A Certificate of Correction was issued on November 30, 2010.

78.     Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

79.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '845 patent.

80.    The claims of the '845 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

81.    The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

82.    Defendant has directly infringed the claims of the '845 patent through the end of its term by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent through the end of its term. As just one example of infringement, the Accused Products used by Defendant provide a method for performing and/or an apparatus comprising a base station allocating at least one of a plurality of data channels to a first medium for data transmission via a wireless device; the base station allocating at least one remaining data channel of the plurality of data channels to a second medium for data transmission via the wireless device; and the base station dynamically adjusting, during data transmission, a number of the data channels assigned to one of the first and second media to remain within limits of a desired level of service. *See* '845 Evidence of Use Chart attached hereto as **Exhibit E**.

83.    Defendant has indirectly infringed and continued to indirectly infringe the '845 patent by inducing others to directly infringe the '845 patent. Defendant has induced and continued to

induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '845 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '845 patent, including, for example, claim 1. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '845 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '845 patent. Defendant's inducement is ongoing.

84. Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '845 patent. Defendant has contributed and continued to contribute to the direct infringement of the '845 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '845 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '845 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

85. Defendant had knowledge of its infringement of the '845 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity

through Fleet Connect's notice letter.

86.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

87.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

88.     Defendant's infringement of the '845 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

89.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 7,742,388</u>

90.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety. For purposes of this Count VI, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **MAXcam 360c, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200,** and **Cobra CDR 900**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

91.     The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. The '388 patent is entitled "Packet Generation Systems and Methods."

92.     Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                    Page | 21

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 21 of 30     PageID #: 21

93.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

94.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

95.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

96.     Defendant has directly infringed and continues to directly infringe the claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.  For instance, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  As just one example of infringement, Defendant performs a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet, wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and

transmitting the extended packet from an antenna. *See* '388 Evidence of Use Charts attached hereto as **Exhibit F**.

97.     Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendant's inducement is ongoing.

98.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                    Page | 23

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 23 of 30     PageID #: 23

invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

99. Defendant had knowledge of its infringement of the '388 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

100. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

101. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

102. Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

103. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

104. Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent. Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology. The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VII: <u>INFRINGEMENT OF U.S. PATENT NO. 8,005,053</u>

105.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.  For purposes of this Count VII, the "Accused Products" include Defendant's computing devices, including, but not limited to, the **Radar Detectors including, but not limited to, ESCORT Redline 360c, MAXcam 360c, MAX 4, Redline 360c and M2 Bundle, Dash Cams including, but not limited to, Cobra SC 250R, Cobra SC 220C, Cobra SC 120, Cobra SC 200, Cobra SC 400/D, Bundles including, but not limited to, SC 400 Full Coverage Rear View Bundle and SC 400 Full Coverage External View Bundle**, and any other devices and hardware, software, and functionality that comprise substantially similar functionality.

106.     The USPTO duly issued U.S. Patent No. 8,005,053 (the "'053 patent") on August 23, 2011, after full and fair examination of Application No. 12/696,760, which was filed on January 29, 2010.  The '053 patent is entitled "Channel Interference Reduction."

107.     Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

108.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

109.     The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

110.     The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                 Page | 25

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 25 of 30     PageID #: 25

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

111.     Defendant has directly infringed the claims of the '053 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent.  As just one example of infringement, Defendant offers a communication device for storing data encoded for a plurality of different wireless protocols, the communication device including a plurality of wireless transceivers, each of which is configured to transmit data according to a corresponding one of the plurality of different wireless protocols where the communication device selects one of the plurality of different wireless protocols and encodes data of an unselected one of the plurality of different wireless protocols into the selected wireless protocol, and transmits the encoded data using the one of the plurality of wireless transceivers corresponding to the selected wireless protocol. *See* '053 Evidence of Use Charts attached hereto as **Exhibit G**.

112.     Defendant has indirectly infringed and continued to indirectly infringe the '053 patent by inducing others to directly infringe the '053 patent. Defendant has induced and continued to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '053 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '053 patent, including, for example, claim 1. Such steps by Defendant have included, among other things,

advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '053 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '053 patent. Defendant's inducement is ongoing.

113.    Defendant has indirectly infringed and continued to indirectly infringe by contributing to the infringement of the '053 patent. Defendant has contributed and continued to contribute to the direct infringement of the '053 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '053 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '053 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

114.    Defendant had knowledge of its infringement of the '053 patent at least as of December of 2020, when it was notified of the Asserted Patents and the alleged infringing activity through Fleet Connect's notice letter.

115.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind to Fleet Connect's patent rights.

116.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent, and this objective risk was either known or should have been known by Defendant.

117. Defendant's infringement of the '053 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

118. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

119. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

120. Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c. Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements of the Asserted Patents be found willful, and

that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

**COMPLAINT FOR PATENT INFRINGEMENT**

E.D. Tenn. No. 1:25-cv-004                                                                        Page | 29

Case 1:25-cv-00004-CEA-CHS     Document 1     Filed 01/03/25     Page 29 of 30     PageID #: 29

Dated: <u>January 3, 2025</u>

Respectfully submitted,

By: <u>*/s/ Adam C. Sanders*</u>

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
Adam C. Sanders, BPR # 031284
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450
(423) 756-2010
asanders@bakerdonelson.com

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305
Email: matt@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

\* *pro hac vice* forthcoming

**<u>Exhibits</u>**
   A.  Evidence of Use Chart – US 6,549,583
   B.  Evidence of Use Chart – US 6,633,616
   C.  Evidence of Use Chart – US  7,058,040
   D.  Evidence of Use Chart – US 7,260,153
   E.  Evidence of Use Chart – US 7,656,845
   F.  Evidence of Use Chart – US 7,742,388
   G.  Evidence of Use Chart – US 8,005,053